IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

STEVE R. PHILLIS,

　　　　Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

　　　　Defendant.

No. C14-2023

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.　　**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.　　**PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.　　**FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　　　A.　*Phillis' Education and Employment Background* . . . . . . . . . . . . . 4
　　　　B.　*Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 4
　　　　　　　1.　*Phillis' Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　　　　　　2.　*Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 5
　　　　C.　*Phillis' Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.　　**CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
　　　　A.　*ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 9
　　　　B.　*Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 12
　　　　　　　1.　*Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 12
　　　　　　　2.　*Consultative Examining Medical Source Opinions* . . . . . . . . 17
　　　　　　　　　　a.　*Dr. Roberts' Opinions* . . . . . . . . . . . . . . . . . . . . 17
　　　　　　　　　　b.　*Welshons' Opinions* . . . . . . . . . . . . . . . . . . . . . 19
　　　　　　　3.　*Non-Examining State Agency Medical Opinions* . . . . . . . . 20

V.　　**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.　　**ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Steve R. Phillis on May 8, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits.[1] Phillis asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Phillis requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On July 2, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Phillis' Education and Employment Background

Phillis was born in 1957. He did not graduate from high school. He dropped out in the tenth grade. However, he later earned a GED. Phillis also attended one year of college in 2001. In the past, Phillis worked as a truck driver and delivery service/courier driver.

### B. Administrative Hearing Testimony

#### 1. Phillis' Testimony

At the administrative hearing, Phillis testified that he stopped working due to panic attacks. He described his panic attacks as similar to asthma attacks. According to Phillis, when a panic attack arises, he has difficulty breathing and gets weak. He also stated that he is unable to drive when a panic attack occurs. Phillis indicated that his panic attacks last anywhere from a few minutes to as long as two hours. His panic attacks also sometimes cause fatigue and headaches.

Phillis further stated that his work history has also been sporadic due to anxiety and left shoulder pain. Phillis' attorney questioned Phillis further about his left arm pain:

> Q:   . . . What do you notice the most often, the problem with your left arm?
> A:   A lot of pain. Weakness.
> Q:   Okay. Where is the pain you're feeling?
> A:   In the shoulder. . . .
> Q:   What level would you say it is most of the time?
> A:   If 10 is the worst, it's a 10 or worse. Mostly 9, 10.
> Q:   And have you had any help with it? Have you had any procedures done on it?

4

A: Just cortisone shots every four months.
Q: Do you get some relief from the cortisone shots?
A: Some. . . .
Q: So how long will the relief last before you get back to a 10/high level.
A: Two, three months.

(Administrative Record at 43.)

In May 2011, Phillis had a minor stroke. He described his stroke as follows:

> What happened was I just was in the bathroom and just blacked out, went to the floor. After that, weakness in the left shoulder, my left arm, left leg, left side. Been a lot worse as far as memory, comprehension.

(Administrative Record at 42.) He stated that his primary memory problems are with short-term memory and recollection. Phillis also has been diagnosed with depression. He described his mood as "pretty down" and "negative." He testified that "[i]t's just lack of wanting to do anything. Nothing seems that exciting."[2]

## 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert David A. Rinehart with a hypothetical for an individual who is:

> able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. They could sit for six hours in an eight-hour work day, they could stand and/or walk six hours in an eight-hour work day. They could do all postural activities on an occasional basis, except they shouldn't climb robes [(sic)] or scaffolds. The individual can do no overhead lifting with the left upper extremity. And they can have contact with others that is brief and non-intense.

(Administrative Record at 56.) The vocational expert testified that under such limitations, Phillis could perform his past work as a courier driver.

---

[2] Administrative Record at 47.

### C. Phillis' Medical History

On May 21, 2011, Phillis presented at the Emergency Room at Covenant Medical Center in Waterloo, Iowa, with numbness involving the left side of his face and body. In discussing his symptoms, Dr. Cristina I. Pasarian, M.D., noted that:

> [Phillis] denies weakness, although admits to some clumsiness of left upper and lower extremities. Upon walking in the hospital, he felt he might fall, although this did not happen. He describes his numbness as an electric shock involving the whole left side of his body. . . . No speech disturbance. No vision changes or hearing loss. No headache. No prior similar symptoms. [Phillis] denies any lightheadedness, dizziness, chest pain, palpitations. He admits to severe anxiety and panic attacks and sensation of anxiety was accompanying his symptoms.

(Administrative Record at 296.) Upon examination, Dr. Pasarian diagnosed Phillis with acute stroke, left-sided paresthesias, anxiety, panic disorder, and chronic musculoskeletal pain in the neck and left shoulder. The following day, an MRI revealed a "new ischemic stroke" in the right frontal parietal area.

On September 26, 2011, Disability Determination Services ("DDS") referred Phillis to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Dr. Roland indicated that Phillis claimed he was unable to work due to panic attacks, increased back and knee pain, and complications from his stroke. Phillis reported panic episodes "most mornings and a couple of evenings during the week."[3] Dr. Roland noted that Phillis' leisure time consists of sitting at home watching TV and playing on the computer. Dr. Roland further noted that Phillis "has a driver's license, goes shopping when he has to, [and] helps with light housework, laundry and cooking."[4] Upon examination, Dr. Roland diagnosed Phillis

---

[3] Administrative Record at 353-54.

[4] *Id.* at 355.

with cannabis abuse in sustained full remission, probable major depressive disorder, and panic disorder without agoraphobia. Dr. Roland concluded that:

> [Phillis] presents with a history of a panic disorder and depression. Although he indicates severe depression, his clinical presentation did not support his score on the Beck Depression Inventory-II. While [Phillis] appears to be significantly depressed, the endorsement of severe depression seemed somewhat exaggerated in comparison to clinical presentation. He admittedly has a lack of motivation for employment which was consistent with his 2009 evaluation. His lifestyle continues to be passive. He also appears to have a panic episode although his reliability as an informant is somewhat questionably [(sic)]. Specifically, [Phillis] reported in the psychiatric portion of this [evaluation], that he is experiencing panic episodes most mornings and a couple of evenings per week. This would suggest at least 7 or more panic episodes per week. Yet in the mental status portion of today's report, [Phillis] reported that he only had 2 or 3 panic episodes per week and then went on to state that the duration lasted up to "all day." This is clearly of questionable validity. . . . Memory and intellect are considered appropriate for entry level competitive employment. However, his dress and physical appearance would make it unlikely that he would be hired, especially if he was expected to interact with the general public.

(Administrative Record at 357.)

On October 4, 2011, DDS referred Phillis to Robert M. Welshons, PA-C, for a disability examination. Phillis reported to Welshons that he believes he is disabled due to shoulder pain, back pain, and panic attacks. Welshons also noted that Phillis suffered a stroke earlier in the year, affecting his left side. In particular, his left arm is weaker and has less dexterity. Phillis further stated that his low back pain radiates up into his shoulders. In reviewing Phillis' physical abilities, Welshons noted that:

> Previous to the stroke he was doing some light chores around the house and some mowing of the yard. He still does those

but he has less stamina, so it takes longer, sometimes days to get tasks done. He works for shorter periods of time and then needs to rest. He estimates he can stand or walk about fifteen minutes and then has to sit down. Sitting is more comfortable, and for about 30 minutes in the exam room he seems to sit comfortably. Laying is most comfortable for his back, but it is hard for him to sleep because of pain in so many other areas. . . . If he does grocery shopping he estimates he can help for fifteen or twenty minutes. He can drive, but rarely does so, especially after his stroke.

(Administrative Record at 365.) Upon examination, Welshons diagnosed Phillis with back pain, neck pain, and bilateral shoulder pain. Welshons opined that Phillis "does have chronic pain. He has also had a stroke which has caused some residual weakness, most affecting the left arm."[5] Welshons recommended an injection into the shoulder for pain relief, but Phillis refused. Welshons concluded that:

> Currently [Phillis] would not be a good candidate for any position of employment requiring a lot of physical activity. He should be lifting only very light weights, because most of his lifting must be done with the right arm. He would not be able to do overhead work. He has troubles with standing and walking and sitting for extended periods of time. He is more comfortable sitting, and would be better served in a position allowing for some walking, some moving about, and mostly sitting throughout the day. He has no troubles with speaking or hearing, but he would have troubles with handling objects because of weakness and decreased dexterity in the left hand. He would have normal dexterity in the right hand but would have very little assist from the left side. He should avoid stooping, kneeling and crawling. His driving should be very limited.

(Administrative Record at 366.)

---

[5] Administrative Record at 366.

On April 9, 2013, Phillis met with Dr. Richard J. Roberts, Ph.D., for a neuropsychology evaluation. In reviewing Phillis' medical history, Dr. Roberts noted that since 1992, Phillis' "employment record has been reportedly very spotty, ever since his Panic Disorder became more severe."[6] Dr. Roberts also noted the Phillis suffered a stroke in May 2011. Both Phillis and his spouse stated that they believe his memory and cognitive function have gotten "noticeably worse" since his stroke. Specifically, they reported that "[t]hey frequently have conversations that [Phillis] does not remember afterwards. . . . [Phillis] also described recent problems with word finding lapses."[7] Upon testing, Dr. Roberts found evidence of psychomotor slowing and weak short-term verbal memory when compared to short-term nonverbal memory function. Dr. Roberts also diagnosed Phillis with panic disorder by history. In conclusion, Dr. Roberts opined that "[e]ven if [Phillis] could find meaningful work in the current economy, it is extremely unlikely that he could maintain self-sustaining employment, because of problems with executive function, short-term memory lapses, other types of episodic symptoms, and panic attacks."[8]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Phillis is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

---

[6] *Id.* at 427.

[7] *Id.* at 427-28.

[8] Administrative Record at 429.

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Phillis had not engaged in substantial gainful activity since May 24, 2011. At the second step, the ALJ concluded from the medical evidence that Phillis had the following severe impairments: left shoulder rotator cuff tear, status post cardiovascular accident, panic attacks without agoraphobia, depression, and marijuana dependence, in remission. At the third step, the ALJ found that Phillis did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Phillis' RFC as follows:

> [Phillis] has the residual functional capacity to perform a range of light work . . . specifically as follows: [Phillis] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit for six hours out of an eight-hour workday; he can stand and/or walk for six hours out of an eight-hour workday; [Phillis] can perform all postural activities on an occasional basis except [he] cannot climb ropes and scaffolds; he cannot reach overhead with the left upper extremity; [Phillis] can have brief and non-intense interaction with others.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Phillis could perform his past relevant work as a courier driver. Therefore, the ALJ concluded that Phillis was not disabled.

### B. Objections Raised By Claimant

Phillis argues that the ALJ erred in three respects. First, Phillis argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Second, Phillis argues that the ALJ failed to properly consider the opinions of examining consultative sources, Dr. Roberts and Robert M. Welshons. Lastly, Phillis argues that the ALJ failed to properly consider the opinions of the non-examining State Agency medical sources.

### 1. Credibility Determination

Phillis argues that the ALJ failed to properly evaluate his subjective allegations of disability. Phillis maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Phillis' testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ generally determined that:

13

After careful consideration of the evidence, I find that [Phillis'] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Phillis'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Administrative Record at 19.) More specifically, the ALJ determined that:

Despite his assertion that he could not sustain even sedentary work, [Phillis] has described activities of daily living, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, he testified he could be on his feet no more than 10 minutes and he had a diminished mental capacity. Yet in his *Adult Function Report*, he reported he could mow the lawn, perform small repairs at his home, do woodworking, walk, and shop in stores. He acknowledged he had no difficulty with personal care, preparing [a] simple meal, driving a car, and handling his finances. [Phillis] wrote that he could follow written instructions well and he could follow spoken instructions if they are repeated. He disclosed that he enjoyed reading, watching television, and woodworking on a daily to weekly basis, although he noted it was more difficult due to left arm pain. Socially, [Phillis] reported he played cards with others once per week and he had no problems getting along with family, friends and neighbors. He also reported a similarly adequate range of daily activities and social interactions during a consultative evaluation in September 2011 (Ex. 5F, p. 4).

Although [Phillis'] activities of daily living maybe [(*sic*)] limited to an extent due to his symptoms, the physical and mental capabilities requisite to performing many of the tasks listed above, as well as the social interactions described by [Phillis], replicate those necessary for obtaining and maintaining employment, and they are inconsistent with the presence of an incapacitating condition. [Phillis'] ability to participate in such activities undermined the credibility of [his] allegations of disabling functional limitations.

[Phillis] has provided inconsistent information regarding his work history. He disclosed during a consultative evaluation in September 2011 that he was laid off in 2007 because he was involved in an accident. He also indicated he lost his job in 2008 because he tested positive for cannabis use (Ex. 5F, pp. 3-4). Yet, at the hearing, he testified he stopped working because . . . the harvest season ended and his job as a grain hauler was seasonal in nature. He also inconsistently reported to his primary doctor in 2012 that he quit working in 2008 because of psychiatric symptoms and difficulty interacting with others. Although the inconsistent information provided by [Phillis] may not be the result of a conscious intention to mislead, nevertheless, the inconsistencies suggest that the information provided by [Phillis] generally may not be entirely reliable.

As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that [Phillis'] level of functioning after the alleged onset date had been somewhat greater than [Phillis] had generally reported.

A review of [Phillis'] work history shows that [Phillis] worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [Phillis'] continued unemployment is actually due to medical impairments.

The medical records disclosed evidence of treatment and positive findings that are minimal in light of the disabling physical and psychiatric pathology alleged by [Phillis]. They also disclosed evidence of symptom exaggeration by [Phillis] and otherwise inconsistent information regarding his symptomatology, all of which renders his allegations less than fully credible.

(Administrative Record at 19-20.) Finally, the ALJ concluded that:

While I acknowledge that [Phillis] experiences some level of subjective pain and he has a history of panic attacks, his medical records do not demonstrate disabling symptoms. Except for his stroke in May 2011, [Phillis] has not had any exacerbations of his symptoms that required emergency or urgent treatment. He has been treated conservatively with pain and psychotropic medications. He has not sought formal mental health treatment or a neurological consultation during the relevant period of adjudication. [Phillis] remains capable of performing a wide range of activities of daily living. The evidence at the hearing level also revealed inconsistencies that erode the credibility of [Phillis'] allegations. While [Phillis'] conditions may cause him to have some restrictions and limitations with work related activities, the evidence in file indicates that those limitations are not severe enough to keep him from working within the residual functional capacity assessed in this decision.

In sum, the evidence as a whole supports the residual functional capacity assessed by this decision. [Phillis'] subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms. . . .

(Administrative Record at 24.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Phillis' treatment history, medical history, use of medications, functional restrictions, work history, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Phillis' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized

and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Phillis' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    *Consultative Examining Medical Source Opinions*

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

### a.    *Dr. Roberts' Opinions*

Phillis argues that the ALJ failed to properly evaluate the opinions of his examining neuropsychologist, Dr. Richard J. Roberts, Ph.D. Specifically, Phillis argues that the ALJ's reasons for discounting Dr. Roberts' opinions are not supported by substantial evidence in the record. Phillis concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Roberts' opinions.

The ALJ addressed Dr. Roberts' opinions as follows:

> In light of the inconsistencies and other factors affecting
> [Phillis'] credibility, as discussed above, I have given little

17

weight to Dr. Roberts' (and Dr. Duclos') opinion that [Phillis] could not perform any work. It is not known what Dr. Roberts' practice specialty is. I also note that Dr. Roberts was not a treating psychologist, as [Phillis] had only received psychotropic agents from Dr. Duclos. Further, the report appears to be a dictated draft that was not electronically signed. In any event, the opinion is inconsistent with the minimal objective findings in Dr. Duclos' treating records. The doctors here apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Phillis] and seemed to uncritically accept as true most, if not all, of what [he] reported. I note that the doctor indicated [Phillis] was not a malingerer, yet, there is no evidence that formal testing was conducted to confirm this. As explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Phillis'] subjective complaints. This opinion is also inconsistent with [Phillis'] admitted activities of daily living, and more importantly, his work activities after his alleged onset date, all of which have already been described above in this decision.

(Administrative Record at 23.)

In his brief, Phillis takes issue with the ALJ's questioning of Dr. Roberts' practice specialty and whether Dr. Roberts signed the opinion provided in the record. While the heading of the written opinion only refers to Dr. Roberts as a psychologist, the body of the opinion indicates that Dr. Roberts is a neuropsychologist. Regardless of whether Dr. Roberts is a psychologist or neuropsychologist, the Court finds this discrepancy to be only a minor and insignificant reason articulated by the ALJ for discounting Dr. Roberts' opinions. As for whether the opinion was only a draft and not signed by Dr. Roberts, there is no doubt that the opinion from Dr. Roberts provided in the record is a draft and was not electronically signed. The opinion states as much at the top of the document.[9]

---

[9] *See* Administrative Record at 427 (Dr. Roberts' opinion document, stating in bold letters at the top of the document **"Draft: Not Electronically Signed."**).

Again, the Court finds this to be a minor reason by the ALJ for discounting Dr. Roberts' opinions.

More significantly, in his decision, the ALJ appropriately explained that he discounted Dr. Roberts' opinions due to inconsistencies with: (1) Phillis' other treatment records, (2) his activities of daily living, (3) Phillis' credibility,[10] and (4) his prior work history. The Court finds such reasoning adequate for discounting Dr. Roberts' opinions. *See Wagner*, 499 F.3d at 848 ("'The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'") (quotation omitted). Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Roberts. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b.   Welshons' Opinions

Similar to Dr. Roberts, Phillis argues that the ALJ also failed to properly evaluate the opinions of Robert M. Welshons, PA-C, an examining source performing a disability evaluation for DDS. Specifically, Phillis argues that the ALJ's reasons for discounting Welshons' opinions are not supported by substantial evidence in the record. Phillis concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Welshons' opinions.

The ALJ addressed Welshons' opinions as follows:

> I have given great weight to Mr. Wilshon's [(*sic*)] assessment that [Phillis] could not perform overhead work because it is

---

[10] As discussed in section *IV.B.1* of this decision, the Court determined that the ALJ properly evaluated Phillis' credibility, and did not err in finding Phillis to be a less than credible and an unreliable source. *See also* Administrative Record at 19-20, 24 (ALJ's discussion of Phillis' credibility).

consistent with the evidence as a whole. However, I give
minimal weight to Mr. Wilshon's [(*sic*)] opinion concerning
[Phillis'] exertional limitations because it was rendered in
vague terms. Furthermore, I find that the other nonexertional
limitations he assessed are overly restrictive, given the
minimal physical findings and, more importantly, the
inconsistencies noted during the physical examination.

(Administrative Record at 21.)

Having reviewed the entire record, the Court finds that the ALJ properly considered
and weighed the opinion evidence provided by Welshons. The Court also finds that the
ALJ provided adequate reasoning for both granting weight to Welshons' opinions, and
discounting Welshons' opinions. *See Wagner*, 499 F.3d at 848 ("'The ALJ may reject the
conclusions of any medical expert, whether hired by the claimant or the government, if
they are inconsistent with the record as a whole.'") (uotation omitted)). Accordingly, even
if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions
of the ALJ because they are supported by substantial evidence on the record as a whole.
*Guilliams*, 393 F.3d at 801.

### 3. Non-Examining State Agency Medical Opinions

Phillis argues that the ALJ failed to properly evaluate the opinions of the state
agency medical consultants. Phillis maintains that the ALJ failed to properly consider the
various opinions of these non-treating consultative doctors in making his RFC assessment
for Phillis. Phillis concludes that this matter should be remanded for further consideration
of the opinions of the non-examining state agency medical consultants.

An ALJ is required to evaluate every medical opinion he or she receives from a
claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source,
then the ALJ considers the following factors for determining the weight to be given to the
non-treating medical opinion: "(1) examining relationship, (2) treating relationship,
(3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v.*

*Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In his decision, the ALJ thoroughly addressed the non-examining state agency consultative opinions as follows:

> In determining [Phillis'] residual functional capacity, I have given significant weight to the opinion of the State agency medical consultants, who determined [Phillis] could perform a range of light work with the additional nonexertional limitations set forth in this Finding (Ex. 2A and 4A). However, they noted a cane was necessary for navigating stairs, long distance ambulation and walking on uneven ground. I find the latter restriction to be unnecessary and inconsistent with the record, as there is nothing in the medical records to suggest [Phillis] was prescribed a cane (he acknowledged it was not prescribed) (Ex. 4E). I give significant weight to the other limitations assessed by the State agency medical consultants.
>
> I give some weight to the State agency psychological consultants' opinion that [Phillis] would have some level of difficulties with interpersonal functioning (Ex. 4A, p. 13). However, the opinion that he would [] have intermittent difficulties with extended attention and concentration, detailed instructions, and pace change is not entirely supported by the record, as [Phillis] has demonstrated sufficient cognitive capacity during objective testing throughout the record (Ex. 5F). He also admitted to a range of daily activities that is inconsistent with the mental limitations noted by the consultants (Exs. 4E and 5F).

(Administrative Record at 23.)

Here, the ALJ thoroughly reviewed Phillis' medical records and fully considered the opinions of all medical sources, including the state agency consultative reviewing sources.[11] Specifically, the ALJ addressed the state agency consultative opinions and

---

[11] *See* Administrative Record at 18-24.

determined that partial weight should be given to their opinions.[12] The Court finds that the ALJ provided adequate reasoning for both granting weight to the state agency medical opinions, and discounting parts of the state agency medical opinions. *See Wagner*, 499 F.3d at 848 ("'The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'") (quotation omitted).

Therefore, the Court concludes that the ALJ properly considered and weighed the opinion evidence provided by the state agency consultative medical sources. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, including the opinions of the state agency consultative doctors, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## V. CONCLUSION

The Court finds that the ALJ properly determined Phillis' credibility with regard to his subjective complaints of disability and pain. The Court also finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Roberts, Welshons, and the state agency medical consultants. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

---

[12] *Id.* at 23.

## VI.  ORDER

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of February, 2015.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA